THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v*: ALLAN CASILLO, Defendant-Appellee.

Third District   No. 80-628

Opinion filed September 9, 1981.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Gerry R. Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Kenneth A. Grnacek, of Joliet, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

The People appeal from an order of the Circuit Court of Will County, quashing a search warrant and suppressing the evidence obtained thereunder.

In substance the complaint for search warrant alleged as follows:

That on June 29, 1979, the body of James W. Pandow was found lying on 191st Street in Mokena, Illinois. The defendant, Allan Casillo, had reported to the police that while driving home shortly before midnight he came upon the body and later reported it to the police.

That a pathologist had examined the body and determined the cause of death resulted from the victim being struck three or four times with an elongated blunt instrument similar to a tire iron and that the victim had wounds similar to defense wounds.

That a forensic scientist compared samples of glass found at the scene to samples of glass removed from the defendant's garbage and that they came from the same original object. In addition, paint samples had been obtained from the victim's clothing which needed to be compared with paint scrapings from the defendant's motor vehicle.

That a named individual arrived at the scene and observed the defendant and his red Dodge van with a broken rear view mirror. That based upon his observations of the scene and certain remarks made by the defendant, as well as the fact that the individual later saw the defendant's van with new replacement mirrors, it was believed that the defendant's vehicle was involved in the death of the decedent.

That another named individual saw a red Dodge van at a particular address which matched the description of what the police believed to be the hit and run vehicle and that several persons appeared to be working on the mirror on the passenger side of the vehicle but that the individual was chased off by the people when he approached the area. That the individual, however, noted the license number of the vehicle which was registered to the defendant.

That the glass recovered from the defendant's garbage by a deputy sheriff was located at the same address as given by the witness to the attempted removal of the damaged mirror.

That the defendant had been identified by an auto supply dealer as the individual who had inquired about purchasing some rear view mirrors the day after the body was found.

Finally, that the affiant, a deputy sheriff, believed that the search and seizure of the defendant's van would disclose further physical evidence, including the murder instrument, to connect the defendant with the offense.

The items the complainant sought to seize were samples of paint, samples of glass, a tire iron or other elongated blunt object, portions of the van bearing holes to which a mirror would have been attached and a 4 x 6 rear-view mirror matching the one the police already had in their possession.

Based upon the foregoing, a search warrant was issued for the search

of the defendant's van and the seizure of the items listed in the complaint.

Subsequently, the defendant was arrested and charged, not with murder, but with failure to stop and report a fatal accident, which was later amended to reckless homicide, a Class 4 felony.

The defense filed a motion to suppress defendant's confession to striking the decedent and to quash the search warrant and suppress the evidence seized pursuant thereto. Defendant's motion to suppress the confession was denied, but his motion to quash the search warrant and suppress the evidence seized thereunder was granted on the grounds that the complaint for search warrant failed to allege sufficient facts to constitute probable cause to believe the defendant had committed the offense alleged in the complaint for search warrant, *i.e.*, murder.

Prior to granting defendant's motion to quash the search warrant and suppress evidence, the court reserved its final ruling to enable the litigants to submit authority on the question whether a search warrant, though failing to state sufficient facts to show probable cause to believe that the victim was murdered by defendant, may nevertheless state sufficient probable cause to believe that another offense, other than murder, was committed by the defendant.

Following the submission of what the prosecution and defense believed to be appropriate authorities for their respective positions, the circuit court granted the defendant's motion to quash the search warrant and suppress the evidence seized pursuant thereto. We reverse.

■■ A complaint for a search warrant must be sufficient for a judicial officer to find probable cause for the warrant, and to do so facts must be related to cause a reasonable man to believe that a crime has been committed and that evidence thereof is in the place to be searched. *People v. George* (1971), 49 Ill. 2d 372, 274 N.E.2d 26; *People v. Francisco* (1970), 44 Ill. 2d 373, 255 N.E.2d 413.

As might be expected, the cases disclose a considerable play on words in defining the probable cause that must be established to justify the issuance of a search warrant. A commonly accepted and used, as well as a realistic, definition is found in *People v. Fiorito* (1960), 19 Ill. 2d 246, 257, 166 N.E.2d 606, 613, where the supreme court stated:

> " 'If there is reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged, it is a sufficient basis for the issuance of a search warrant.' *People v. Lavendowski*, 329 Ill. 223, 230.
>
> A complaint for such a warrant is sufficient to authorize its issuance when the facts, stated and sworn to, show probable cause for the writ. It is not required that the complaint show, beyond a

reasonable doubt, that the warrant should be issued. (*People v. Dolgin*, 415 Ill. 434, 441; *People v. DeGeovanni*, 326 Ill. 230, 234.)"

The norm for interpretation of the contents of the complaint and affidavits for search warrants is furnished in *People v. Thomas* (1975), 62 Ill. 2d 375, 379-80, 342 N.E.2d 383, 385-86, where the court commented upon the quotes from *United States v. Ventresca* (1965), 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741, as follows:

"In *Ventresca* the court said that 'the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the court's cases are to be followed and the constitutional policies served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts towards warrants would tend to discourage police officers * * * before acting.' (380 U.S. at 108, 13 L. Ed. 2d at 689, 85 S. Ct. at 746; 403 U.S. 573, 577, 29 L. Ed. 2d 723, 730, 91 S. Ct. 2079.) The court went on to state: 'Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. [Citation.]' 380 U.S. at.109, 13 L. Ed. 2d at 689, 85 S. Ct. 746."

We have set forth at length the averments of the complaint and affidavits to show what we believe to be a sincere effort on the part of the police officers to comply with the requirements of the fourth amendment and have regard for the rights it affords the defendant. The degree of particularity required in search warrants varies in degree with the nature of the material to be seized. (See, *e.g.*, *Steele v. United States* (1925), 267 U.S. 498, 69 L. Ed. 757, 45 S. Ct. 414; *People v. Curry* (1973), 56 Ill. 2d 162, 171, 306 N.E.2d 292, 297; *People v. Williams* (1968), 40 Ill. 2d 522, 531, 240 N.E.2d 645, 650.) The complaint and affidavit reveal an attempt to avoid authorization for a prohibited general search. More than ample evidence

is disclosed to justify a judge, applying the standards set forth in the above cases, to believe that defendant had committed either the crime of murder or the lesser-included offenses of failure to stop and report a fatal accident or reckless homicide.

■■ The fourth amendment does not prohibit all searches, only those which are termed unreasonable. In this case the search was not unreasonable.

■■ In *People v. Hanei* (1980), 81 Ill. App. 3d 690, 403 N.E.2d 16, the court held that there is no constitutional requirement that the crime under investigation be named in the complaint or affidavit for search warrant. In discussing *Hanei*, the defendant correctly points out that there was probable cause to believe that a *particular* offense had been committed. In the instant case, too, there was probable cause to believe that one of two *particular* offenses, *i.e.*, murder or failure to report an accident involving death, had occurred. Assuming, *arguendo*, that the complaint for the search warrant did not state probable cause to believe that the offense which the officers were investigating—murder—had occurred, the complaint nevertheless clearly revealed probable cause to believe that the particular offense of failure to report an accident involving death had been committed. Thus, just as in *Hanei*, the complaint in the instant case clearly demonstrated probable cause to believe that a particular offense had been committed.

For the foregoing reasons the judgment of the Circuit Court of Will County in quashing the search warrant and suppressing the evidence seized thereunder is reversed and the cause is remanded to the Circuit Court of Will County for further proceedings.

Reversed and remanded.

BARRY, J., concurs.

Mr. JUSTICE HEIPLE, specially concurring:

The record reflects the search warrant affidavit was prepared by police to recover items they believed were evidence of a murder. The police thought such an offense had been committed based on their investigation as well as medical reports indicating Mr. Pandow's death occurred due to wounds from a blunt instrument. This belief was mistaken. Defendant was charged with reckless homicide.

At the suppression hearing the trial judge quashed the search warrant and the evidence seized as a result of its execution. He concluded the affidavit lacked sufficient facts to believe a murder, the offense named in the search warrant affidavit, had been committed. This was error.

A false issue has been injected into this cause by the trial judge eval-

uating a search warrant in terms of the title of the offense named in the complaint as opposed to the affidavit's factual composition. A search warrant affidavit must contain sufficient facts to cause a neutral magistrate, as a reasonable man, to believe an offense has been committed and that the evidence sought is in the place to be searched. (*People v. George* (1971), 49 Ill. 2d 372, 377.) It does not matter whether the affidavit indicates the offense is murder, voluntary manslaughter, or reckless homicide, since the facts in the affidavit, not the offense cited by the affiant, are those which the magistrate is required to assess in terms of their sufficiency. If it were otherwise, the naming of the offense would become the operative fact upon which the evaluation by the magistrate would depend. It is the magistrate's analysis of the information the affidavit supplies, however, which forms the foundation of whether probable cause exists. Thus the facts, or the story the affidavit relates, are what count, not how they are titled. The particularity requirement of the fourth amendment requires nothing more. Accord, *People v. Raicevich* (1978), 61 Ill. App. 3d 143, cert. denied (1979), 441 U.S. 963, 60 L. Ed. 2d 1067, 99 S. Ct 2409.

As to whether the affidavit contained sufficient details which could lead a neutral magistrate to conclude a crime had been committed and evidence of the crime was in the place to be searched, the question is a close one. On balance, however, I believe they do, and therefore concur with that portion of the majority's opinion and their ultimate resolution of this cause.