[No. 11184-9-III.    Division Three.    January 21, 1992.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSE ANTONIO
Z. GARCIA, *Appellant*.

869

*John Luke McKean* and *McKean Law Offices,* for appellant.

*John R. Knodell, Prosecuting Attorney,* and *Kenneth L. Jorgensen, Deputy,* for respondent.

THOMPSON, A.C.J. — Jose Garcia appeals his conviction for possession of cocaine. He contends the affidavit supporting the search warrant for his motel room was insufficient. Thus, the court should have suppressed evidence of cocaine seized upon execution of the warrant. We affirm.

Police Officer John Mays attested that on July 18, 1990, he contacted Teri Sullivan, the manager of the Sunland Motor Inn in Moses Lake. She stated Mr. Garcia was the tenant in room 20 and he had told her he did not want his room cleaned. When the owner of the inn informed Mrs. Sullivan that all rooms were to be checked on a daily basis, she entered room 20.

Mrs. Sullivan related to Officer Mays the room smelled like diesel fuel. She also observed a brown paper bag filled

with folded papers in a drawer in the room. Officer Mays demonstrated a paper bindle fold for Mrs. Sullivan. He stopped halfway through the fold, and Mrs. Sullivan told him the papers she had seen were folded more. After the officer completed the fold, Mrs. Sullivan stated the papers she had seen were folded completely and were glossy.

Officer Mays further attested:

> Based on the affiant's past experience in executing search warrants and schools attended by the affiant it is known that, cocaine is not only made using diesel fuel, but that cocaine is quite often transported in fuel tanks that contain diesel fuel. Cocaine made with diesel and or transported in diesel fuel retains some of the odor of diesel fuel. Cocaine is packaged in several types of ways for [sale]. One of the ways includes in paper bindle folds using glossy type paper. The glossy type paper is used to keep the cocaine from adhering to the paper. Also from past experience the affiant has knowledge that motel rooms are quite often used for the distribution of controlled substances. The affiant has knowledge that persons dealing from motel rooms want no persons inside the room to change linen or do other things that can draw suspicion to themselves.

Mrs. Sullivan told Officer Mays Mr. Garcia received numerous telephone calls at all hours and the same people were going to his room on a daily basis. She gave the police a list of license numbers of vehicles used by persons going to room 20. One of these license numbers was that of a vehicle registered to Jose Garcia. Tip sheets indicated the vehicle was involved in drug trafficking in Moses Lake.

Based upon Officer Mays' affidavit, a warrant was issued to search room 20 of the Moses Lake Sunland Motor Inn. The warrant was executed, and cocaine was seized from that location. Subsequently, Mr. Garcia was charged with possession of cocaine. He moved to suppress. The court heard argument of counsel, and ruled:

> I think if I was going to rank the order of the importance of the information in the search warrant, it would seem to me the existence of the bindles was most probative to the magistrate and to this court. The numerous telephone calls, the existence of the diesel fuel type smell were . . . not innocuous type details but were in fact specific evidence of the existence of contraband. That, coupled with the remainder of the details

which in and of themselves are innocuous, I think was sufficient for this magistrate to issue out a search warrant. Although I will be the first to say that is a very close question.

Mr. Garcia contends the information supplied in the affidavit does not establish probable cause to believe cocaine would be found on the described premises. Specifically, he argues (1) Mrs. Sullivan had no experience by which she could relate what she observed in the motel room to the presence of cocaine, (2) her observations do not establish probable cause to believe the room contained cocaine, and (3) there was no showing of the reliability of the tip sheet identifying defendant's vehicle as one used in cocaine trafficking in the Moses Lake area.

The validity of a search warrant is reviewed on an abuse of discretion standard, *State v. Smith*, 93 Wn.2d 329, 352, 610 P.2d 869, *cert. denied*, 449 U.S. 873 (1980), giving great deference to the issuing magistrate's determination of probable cause. *State v. Jackson*, 102 Wn.2d 432, 442, 688 P.2d 136 (1984); *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981). Generally, issuance of a warrant is deemed proper if a reasonable, prudent person would understand from the facts contained in the affidavit that a crime has been committed, and evidence of the crime can be found at the place to be searched. *State v. Fisher*, 96 Wn.2d 962, 965, 639 P.2d 743, *cert. denied*, 457 U.S. 1137 (1982). Affidavits should be tested in a commonsense, not hypertechnical, manner, as long as the basic requirements are met. *State v. Partin*, 88 Wn.2d 899, 904, 567 P.2d 1136 (1977); *State v. Walcott*, 72 Wn.2d 959, 962, 435 P.2d 994 (1967), *cert. denied*, 393 U.S. 890 (1968). Doubts should be resolved in favor of the validity of the warrant. *Fisher*, at 964; *Partin*, at 904.

In reviewing the validity of warrants based upon hearsay information, the constitutional criteria for determining probable cause is measured by the 2-prong *Aguilar-Spinelli* test. *State v. Smith*, 110 Wn.2d 658, 662, 756 P.2d 722 (1988) (citing *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas*, 378

U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964)), *cert. denied*, 488 U.S. 1042 (1989); *State v. Medcalf*, 58 Wn. App. 817, 820, 795 P.2d 158 (1990). Under that test, the reliability of an informant is established by showing

> underlying circumstances from which the informant drew his conclusion so that a magistrate can independently evaluate the reliability of the manner in which the informant acquired his information; [basis of knowledge prong] and . . . underlying circumstances from which the officer concluded that the informant was credible or his information reliable [veracity prong].

*Smith*, 110 Wn.2d at 663 (quoting *State v. Jackson*, 102 Wn.2d 432, 435, 688 P.2d 136 (1984)).

■ Mr. Garcia complains that the basis of knowledge prong was not met in this case. He points out Mrs. Sullivan did not recognize the diesel smell or the folded glossy packets as evidence of drug activity. It was necessary for Officer Mays to interpret the information she supplied in order to reach the conclusion that cocaine probably could be found in Mr. Garcia's motel room. However, the court in *State v. Berlin*, 46 Wn. App. 587, 592, 731 P.2d 548 (1987) held it is sufficient if the affidavit shows the observer provided enough firsthand facts to an individual who possesses the necessary skill, training or experience to link the information given to criminal activity. There, the detective interviewed three citizens and was convinced by what they described the defendant was growing marijuana in his shed. The court held:

> Certainly, the better practice would be for the affidavits to recite how an informant is qualified to identify the observed plants as marijuana. Again, mindful of the deference given to magistrates who issue warrants and that doubts must be resolved in favor of the warrant's validity, it was not error to find that the basis of knowledge prong of *Aguilar-Spinelli* was satisfied.

(Citations omitted.) *Berlin*, at 592. *See also State v. Ibarra*, 61 Wn. App. 695, 701-02, 812 P.2d 114 (1991).

Here, Officer Mays attested that based upon his experience he knows cocaine is made using diesel fuel, is often transported in diesel fuel tanks, and retains some of the odor of diesel fuel. Also based upon his experience, he

knows that cocaine is often packaged in glossy paper folded in a certain way. He demonstrated the fold for Mrs. Sullivan, and she identified it as the same as she had seen in Mr. Garcia's room.[1] Because Mrs. Sullivan provided facts from which Officer Mays could link the information given to criminal activity, the affidavit satisfies the basis of knowledge prong. *Berlin.*

Mr. Garcia's next contention is that Mrs. Sullivan's observations, even when coupled with Officer Mays' explanation, do not establish probable cause to believe cocaine would be found in his room. She did not see any cocaine, she only saw bindles and smelled diesel fuel.

■ Professor LaFave states:

> Mere suspicion that the objects in question are connected with criminal activity will not suffice. . . .
> This is not to suggest, however, that the information linking the things to be seized with criminal activity must always be of the direct sort or that reasonable inferences cannot be drawn from the surrounding circumstances.

(Footnotes omitted.) 2 W. LaFave, *Search and Seizure* § 3.7(d), at 102 (1987).

In *State v. Courcy*, 48 Wn. App. 326, 739 P.2d 98, *review denied*, 109 Wn.2d 1017 (1987), the defendant contended a Yakima police officer did not have probable cause to seize a folded paper bindle which he saw when the defendant removed his driver's license from a clear plastic identification holder. The court stated the issue at page 328 as "whether the officers had probable cause to believe the item viewed was contraband . . .". In answering "yes", the court reasoned at page 329:

> Although Officer Cruz testified he had no formal police training related to drug identification, he had "on the job" training and observed bindles such as this during street arrests; in his experience, the bindle always contained drugs. In 3 years with the Yakima Police Department, he had personally made four or five cocaine arrests and in almost every case, cocaine was

---

[1]Mr. Garcia argues that the affidavit is unclear on this latter point. We disagree. It is apparent from the affidavit that when Officer Mays completed the demonstration of folding the bindle, Mrs. Sullivan indicated that the papers she had seen were folded the same way.

packaged in paper bindles like the one seen in the defendant's transparent plastic identification holder. . . . Finally, Officer Cruz testified that when Mr. Courcy realized the officer had spotted the bindle, he pulled it back to his chest. This circumstance, coupled with the knowledge of a bindle's customary use, gave Officer Cruz probable cause to seize it.

(Footnote omitted.)

In *State v. Lair*, 95 Wn.2d 706, 630 P.2d 427 (1981), a police officer seized a folded piece of paper while executing a warrant authorizing a search for marijuana. He opened it and found a fine white powder inside which laboratory tests established to be phencyclidine. The defendant argued at page 716 that the seizure did not satisfy the requirement of the plain view doctrine that it be immediately apparent to the police that they have evidence before them. The court disagreed:

> Objects are immediately apparent for purposes of a plain view seizure when, considering the surrounding facts and circumstances, the police can reasonably conclude they have evidence before them. . . . The trial court concluded that under all the circumstances, particularly the presence of other drugs on the same shelf and the officer's testimony as to prior experience with drugs in flat packages, the police could have reasonably believed they had evidence before them. Our review of the record convinces us that the trial court was correct on this point.

(Citations omitted.) *Lair*, at 716-17.

We could not find any case in which the odor of diesel fuel was listed as an indicator of the presence of cocaine. Defense counsel argued "I've never seen or heard of the use of diesel fuel in cocaine process . . .", but did not supply the court with any expert testimony to rebut the assertions made by Officer Mays in the affidavit. Only "[i]f a defendant establishes by a preponderance of the evidence that statements made by an agent of the State in an affidavit in support of a search warrant were false or made with reckless disregard of the truth, and if the remaining material in the affidavit is insufficient to establish probable cause . . ." is the search warrant voided and the fruits of the search

excluded. *State v. Wilke*, 55 Wn. App. 470, 480, 778 P.2d 1054, *review denied*, 113 Wn.2d 1032 (1989).

Applying the above authority, we hold the warrant was supported by probable cause. Officer Mays recognized Mrs. Sullivan's description of the folded glossy papers as bindles, a distinctive form of packaging commonly used in the sale of cocaine. The information about the bindles did not stand alone, but was viewed in conjunction with the other circumstances which included the odor of diesel fuel and the numerous phone calls received by Mr. Garcia during all hours. While the details may be innocuous when viewed singly, together they give rise to probable cause to believe cocaine was present in the room.

Finally, Mr. Garcia argues the State did not show the reliability of the tip sheet which listed a vehicle licensed under number UX9001 as used in cocaine trafficking in the Moses Lake area. However, the trial court did not rely solely upon the tip sheet information in upholding issuance of the warrant. Even without the tip sheet, the affidavit contained sufficient facts to justify issuance of the warrant. *See Wilke.*

Accordingly, we hold the court did not err when it refused to suppress the evidence of cocaine seized upon execution of the warrant.

Affirmed.

MUNSON, J., and GREEN, J. Pro Tem., concur.